**FILED**

JAN 1 2 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          n.p.          DEPUTY



unsealed 1/27/2016

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

March 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. <u>15CR2310-WQH</u> |
| v. | <u>I N D I C T M E N T</u><br>**(Superseding)** |
| OWEN HANSON (1),<br>    aka "O-Dog",<br>LUKE FAIRFIELD (3),<br>KENNY HILINSKI (4),<br>GIOVANNI BRANDOLINO (5),<br>    aka "Tank",<br>DANIEL PORTLEY-HANKS (6),<br>JACK RISSELL (7),<br>    aka "Animal",<br>DEREK LOVILLE (8),<br>CHARLIE  D'AGOSTINO (9),<br>MARLYN VILLAREAL (10),<br>DYLAN ANDERSON (11),<br>TIM BRYAN (12),<br>JIM MUSE (13),<br>JEFF BELLANDI (14),<br>    aka "Jazzy",<br>CURTIS CHEN (15),<br>JAMES DULEY (16),<br>DEE FOXX (17),<br>KHALID PETRAS (18),<br>RAHUL BHAGAT (19),<br>DAVID KIPPER (20),<br>BRYAN MATAYA (21),<br>TODD OLDHAM (22),<br>DANIEL ORTEGA (23),<br><br>                 Defendants. | Title 18, U.S.C., Sec. 1962(d) —<br>**Racketeering Conspiracy to<br>Conduct Enterprise Affairs<br>(RICO Conspiracy)**; Title 18,<br>U.S.C., Sec. 1955 — **Illegal<br>Gambling Business**; Title 18,<br>U.S.C., Sec. 1956(h) — **Money<br>Laundering Conspiracy**; Title 21,<br>U.S.C., Secs. 841(a)(1) and 846 —<br>**Conspiracy To Distribute<br>Narcotics**; Title 18, U.S.C.,<br>Secs. 981(a)(1)(C), 982, 1955(d),<br>and 1963, Title 21, U.S.C.,<br>Sec. 853, and Title 28, U.S.C.,<br>Sec. 2461(c) — **Criminal Forfeiture** |

The grand jury charges:

//

APY:MWP:BJK:nlv(2):San Diego
1/12/16

**THE OWEN HANSON GAMBLING/DRUG ENTERPRISE ("ODOG ENTERPRISE")**

At all times material to this Indictment:

1.   Defendants OWEN HANSON, LUKE FAIRFIELD, KENNY HILINSKI, GIOVANNI BRANDOLINO, DANIEL PORTLEY-HANKS, JACK RISSELL, DEREK LOVILLE and others constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter collectively referred to as the "ODOG ENTERPRISE"), that is, a group of individuals associated-in-fact.

### Organization Roles

2.   The ODOG ENTERPRISE had the following organizational structure, with various members, employees, and associates occupying the following roles:

a.   OWEN HANSON is founder and leader of ODOG ENTERPRISE. He controlled ODOG ENTERPRISE's operations by exercising decision making authority, and through, in part, the delegation of operational duties to defendants GIOVANNI BRANDOLINO, KENNY HILINSKI, LUKE FAIRFIELD, and DANIEL PORTLEY-HANKS, as well as others.

b.   LUKE FAIRFIELD was a resident of San Diego, California and a Certified Public Accountant ("CPA") licensed in the State of California.   FAIRFIELD assisted OWEN HANSON with laundering illegal proceeds generated by the ODOG ENTERPRISE by setting up shell companies, assisting "runners" with opening bank accounts for the shell companies, and assisting members of the organization with avoiding bank reporting requirements and detection by law enforcement.

c.   GIOVANNI BRANDOLINO, aka "Tank" was a resident of Los Angeles, California.   BRANDOLINO oversaw portions of the enterprise's domestic drug trafficking operation, and routinely executed domestic orders for narcotics.   BRANDOLINO also dealt directly with several

1  gambling clients, including accepted wagers from bettors and collected
2  gambling debts.

3      d.   Defendant KENNY HILINSKI was a resident of Lima, Peru.
4  From Peru, HILINSKI oversaw the enterprise's telephone and Internet
5  operations, resolved disputes between gambling customers and bookies,
6  adjusted customers' lines of credit and online accounts, and tracked
7  bookies' and runners' accounts.

8      e.   DANIEL PORTLEY-HANKS was a resident of Los Angeles,
9  California, and a private investigator licensed in the State of
10 California.  PORTLEY-HANKS oversaw and coordinated the enterprise's
11 organization's enforcement operations by obtaining the personal
12 information – including the names, addresses, and identities of family
13 members – of delinquent gamblers and others, and provided that
14 information to HANSON.   PORTLEY-HANKS also coordinated threats and
15 violent attacks on individuals who owed the organization money.

### Illegal Drug Distribution Network

17     f.   DEREK LOVILLE, a resident of Scottsdale, Arizona, and
18 others distributed illegal drugs and collected payment from customers
19 throughout the United States.

### Bookies

21     g.   ODOG   ENTERPRISE   conducted,   financed,   managed,
22 supervised, directed, and owned BET ODOG INTERNATIONAL, an illegal
23 gambling business involving sports bookmaking.

24     h.   ODOG ENTERPRISE had various bookmakers ("bookies"), who
25 recruited customers, paid off winning bets, collected on losing bets,
26 and delivered payments to HANSON or one of the ODOG ENTERPRISE's
27 runners.  ODOG bookmakers included JIM MUSE, CHARLIE D'AGOSTINO, DYLAN
28 ANDERSON, JEFF BELLANDI, CURTIS CHEN, JAMES DULEY, DEE FOXX, KHALID

PETRAS, RAHUL BHAGAT, DAVID KIPPER, BRYAN MATAYA, TODD OLDHAM, and DANIEL ORTEGA.   Each bookie was responsible for a "package," which refers to all the customer accounts managed by that bookie.

### Runners

i.   ODOG ENTERPRISE used "runners" who transported illegal drugs, and collected proceeds from illegal drug trafficking and gambling.   These runners, such as CHARLIE D'AGOSTINO, MARYLN VILLARREAL, and TIM BRYAN handled customer payments and collections for both gambling and drug proceeds, maintained money caches, and delivered the illegal proceeds to the leaders of the ODOG ENTERPRISE.

### Collectors

j.   ODOG ENTERPRISE also employed "collectors" to intimidate individuals who owed the ODOG ENTERPRISE money.   JACK RISSELL, a resident of North Highlands, California, specialized in more aggressive measures to obtain payment on gambling and extortionate debts, using intimidation, threats, and violence.

3.   ODOG ENTERPRISE was engaged in, and its activities affected, interstate and foreign commerce.

4.   ODOG ENTERPRISE constituted an ongoing organization, whose members functioned as a continuing unit, for the common purpose of achieving ODOG ENTERPRISE's objectives.

5.   Individual A, a resident of Los Angeles, California, is a professional gambler.

6.   Individual B is a former member of the ODOG ENTERPRISE.

### OBJECTIVES OF THE ENTERPRISE

7.   ODOG ENTERPRISE's objectives included the following:

a.   Enriching its leaders, members, and associates through (1) importing, exporting, and distributing illegal drugs throughout

the United States, Australia and elsewhere; (2) operating an illegal gambling business, and (3) practicing extortionate debt collection.

<u>Count 1</u>

**(RACKETEERING CONSPIRACY)**

8. Paragraphs 1 through 7 are hereby realleged and incorporated by reference herein.

9. Beginning at least as early as June 2011 and continuing up to and including January 12, 2016, within the Southern District of California and elsewhere, defendants OWEN HANSON, aka "O-Dog", LUKE FAIRFIELD, KENNY HILINSKI, GIOVANNI BRANDOLINO, aka "Tank", DANIEL PORTLEY-HANKS, JACK RISSELL, aka "Animal", DEREK LOVILLE, and others, being persons employed by and associated with the ODOG ENTERPRISE (as described above), which was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired with each other, and with other persons, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the ODOG ENTERPRISE's affairs through a pattern of racketeering activity involving multiple acts involving narcotics trafficking in violation of:

    a. Title 21, United States Code, Section 841 (Distribution and possession with intent to distribute illegal narcotics);

    b. Title 21, United States Code, Section 952 (Importation of illegal narcotics);

    c. Title 21, United States Code, Section 846 (Attempt and conspiracy to distribute and import illegal narcotics);

//

1  Multiple acts indictable under:

2      d.   Title 18, United States Code, Section 894 (extortionate

3          debt collection);

4      e.   Title 18, United States Code, Section 1084

5          (transmission of wagering information);

6      f.   Title 18, United States Code, Section 1952 (Travel

7          Act/phone and Internet use in aid of racketeering

8          enterprises);

9      g.   Title 18, United States Code, Section 1955 (illegal

10         gambling business);

11     h.   Title 18, United States Code, Sections 1956 and 1957

12         (money laundering); and

13 Multiple acts involving gambling:

14     i.   Cal. Penal Code § 337a (bookmaking).

15    10.  It was a part of the conspiracy that each defendant agreed

16 that a co-conspirator would commit at least two acts of racketeering

17 activity in the conduct of ODOG ENTERPRISE's affairs.

18 **METHODS AND MEANS OF THE RACKETEERING CONSPIRACY**

19    11.  In furtherance of the racketeering conspiracy charged in

20 Count 1, the means and methods used by defendants and their associates

21 included, but were not limited to, the following:

22     a.   Imported, exported, and distributed hundreds of

23 kilograms of illegal narcotics, including but not limited to cocaine,

24 throughout the United States, Australia and elsewhere.

25     b.   Evaded detection by law enforcement by, among other

26 things, laundering its illegal proceeds; setting up shell companies;

27 communicating with encrypted devices; designing, obtaining, and

28 operating vehicles that contained hidden compartments and "traps" to

1   conceal illegal narcotics and other drugs; and maintaining the
2   gambling enterprise's headquarters and the physical platform for its
3   Internet operations outside the United States.

4      c. Ensured its customers' prompt payment of gambling debts
5   through the use of intimidation, threats, and violence;

6      d. Enhanced its power and financial profits by promoting
7   ODOG ENTERPRISE's activities with customers and potential customers.

8      e. Recruited gambling customers in the Southern District
9   of California and elsewhere and supplied the customers with account
10  numbers and passwords for accessing their gambling accounts on ODOG
11  ENTERPRISE's gambling websites, including www.betodog.com. Bookies
12  instructed their customers that they could place bets with their
13  bookmaker, or by calling ODOG ENTERPRISE's toll-free numbers, or
14  through their online accounts on the ODOG ENTERPRISE's websites.

15     f. Extended credit to new customers, so they could begin
16  sports betting without pre-funding their accounts. ODOG ENTERPRISE
17  also provided further extensions of credit to existing customers, so
18  that those customers could wager larger amounts of money than their
19  prior extensions of credit allowed.

20     g. Used facilities in interstate and foreign commerce,
21  such as mobile telephones and Internet websites, to facilitate its
22  drug trafficking, illegal bookmaking and gambling activities, and
23  extortionate debt collection.

24     h. Fostered a violent reputation about its treatment of
25  delinquent gambling and drug customers, including through the use of
26  intimidation, threats, and violence against its customers, especially
27  when customers were late in paying their debts.

28

1        i.   Laundered its illegal drug and gambling proceeds using

2   various entities and persons that appeared to be unrelated to ODOG

3   ENTERPRISE, thereby concealing the true nature, source, and ownership

4   of those proceeds.

5   **OVERT ACTS**

6      12.  In furtherance of the conspiracy and to accomplish the

7   objects of the conspiracy, the defendants and their co-conspirators

8   committed the following acts, among other, within the Southern

9   District of California, and elsewhere:

10       a.  On or about June 10, 2011, OWEN HANSON caused

11          Individual A to transport approximately $1.5 million in

12          drug trafficking proceeds from Sydney, Australia to Las

13          Vegas, Nevada in the form of a casino check.

14       b.  In or about August 2011, OWEN HANSON threatened

15          Individual A and Individual A's spouse with bodily harm

16          if Individual A refused to transport an additional $2.5

17          million in criminal from Australia to the United

18          States.

19       c.  In or about August 2012, DANIEL PORTLEY-HANKS and JACK

20          RISSELL caused packages containing photographs of

21          Individual A's spouse and Individual A, and a printout

22          of biographical information for Individual A,

23          Individual A's spouse, and their family members to be

24          sent Individual A's personal residence in order to

25          threaten and intimidate Individual A into repaying $2.5

26          million Individual A lost gambling.

27       d.  On or about October 20, 2012, DANIEL PORTLEY-HANKS sent

28          OWEN HANSON an email entitled "Operation Shovel" that

8

included a photograph of Individual A's family gravestone altered to suggest that Individual A would die "very soon."

e. Between in or about January 2013 and August 10, 2013, DANIEL PORTLEY-HANKS and JACK RISSELL, acting at OWEN HANSON's direction, caused the United States Postal Service to deliver various threatening materials to Individual A, including but not limited to a DVD that portrayed a masked individual beheading two unknown males with a chainsaw and a knife. The DVD also contained the message: "If you don't pay us our money, this will happen to you."

f. On or about February 20, 2013, JACK RISSELL, acting at OWEN HANSON's direction, physically assaulted an individual in Minneapolis, Minnesota, because that individual failed to repay a gambling debt.

g. On or about March 24, 2014, OWEN HANSON sent LUKE FAIRFIELD the following text regarding a bookie within the organization: "[K] (liquor store) has some of my $. He's gonna write a check to you for $37,000…Please take the # off the 96k (cash I collected from [D.O.] loan) and I'll keep having checks like this come in like this so the 'paper trail' is there."

h. On or about March 26, 2014, LUKE FAIRFIELD deposited a check for $37,600 from a bookie into a bank account of an entity used by the ODOG ENTERPRISE, at First Republic Bank in San Diego, California.

i. On or about April 2, 2014, OWEN HANSON sent LUKE FAIRFIELD an email stating, "I need to set up a new Tax ID corporation or llc, what you think is better-for my runner Want the name of the corporation or llc to be 'Big Dog Sports Memorabilia.' I will have his san diego (po box address) tomorrow for you. Let me know what else you need. My other guy is retiring-says he can't handle the stress the banks give him, lol."

j. On or about April 15, 2014, LUKE FAIRFIELD instructed Individual B to open a bank account for "Big Dog Sports Memorabilia" and warned Individual B that Individual B would only "get into trouble" if he deposited large amounts of cash at once and that Individual B should keep deposits "low to avoid SARs [suspicious activity reports]."

k. On or about April 2, 2014, LUKE FAIRFIELD sent OWEN HANSON an email stating he owned a "50 foot catamaran...big, lots of room in hidden areas."

l. On or about September 24, 2014, DEREK LOVILLE distributed illegal narcotics, supplied by OWEN HANSON, to an individual in Phoenix, Arizona.

m. On or about September 26, 2014, DEREK LOVILLE transferred $1,150 in drug trafficking proceeds to OWEN HANSON via bank transfer.

n. On or about September 26, 2014, Individual B delivered $18,000 in illegal gambling proceeds to MARLYN VILLAREAL.

o. On or about October 20, 2014, GIOVANNI BRANDOLINO and KENNY HILINSKI exchanged text messages about a gambling client that owed the ODOG ENTERPRISE a gambling debt. In response from BRANDOLINO about whether the individual would pay off the debt, HILINSKI responded "He will pay. I can tell his [sic] scared. Doesn't want the K T combo to come out again."

p. On or about October 21, 2014 GIOVANNI BRANDOLINO and KENNY HILINSKI exchanged the following text messages about a gambling client:

> HILINSKI: He needs to pay. He already [expletive] O[wen] in the past.
>
> BRANDOLINO: Don't worry they will pay with cash or [expletive].

q. On or about November 17, 2014, GIOVANNI BRANDOLINO, acting at OWEN HANSON's direction, sent 5 grams of cocaine and 15 capsules of ecstasy from Orange, California to a professional football player who was then located in Nashville, Tennessee.

r. On or about February 27, 2015, an undercover agent provided MARLYN VILLARREAL with $28,000 in illegal gambling proceeds.

s. On or about July 24, 2015, in San Diego California, TIM BRYAN collected $37,500 represented to be proceeds from criminal activity.

t. On or about August 7, 2015, OWEN HANSON caused Rufus Rhone (charged elsewhere) to deliver more than five kilograms of cocaine to an undercover agent in San Diego County, California.

u.   On or about August 3, 2015, in San Diego, California, TIM BRYAN accepted $45,000 represented to be proceeds of criminal activity.

v.   On or about September 3, 2015, BRANDOLINO GIOVANNI provided $50,000 cash in drug trafficking proceeds to an undercover agent in New Jersey.

w.   On or about September 8, 2015, OWEN HANSON caused Rufus Rhone to deliver more than five kilograms of methamphetamine to an undercover agent who was located in San Diego, California.

All in violation of Title 18, United States Code, Section 1962(d).

## Special Sentencing Factor

13.  As to defendant OWEN HANSON, aka "O-Dog", it is further alleged that the above-charged conspiracy involved at least five kilograms of cocaine; a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(b)(1)(A)(ii).

## Count 2

### (ILLEGAL GAMBLING BUSINESS)

14.  Paragraphs 1 through 7 are hereby realleged and incorporated by reference herein.

15.  Beginning on a date unknown but at least as early as January 2012, and continuing up to and including January 12, 2016, within the Southern District of California and elsewhere, defendants OWEN HANSON, aka "O-Dog", LUKE FAIRFIELD, KENNY HILINKSKI, GIOVANNI BRANDOLINO, aka "Tank", DANIEL PORTLEY-HANKS, JACK RISSELL, aka "Animal", CHARLIE D'AGOSTINO, MARYLN VILLAREAL, DYLAN ANDERSON, TIM BRYAN, JIM MUSE, JEFF BELLANDI, aka "Jazzy", CURTIS CHEN, JAMES DULEY, DEE FOXX, KHALID PETRAS, RAHUL BHAGAT, DAVID KIPPER, BRYAN MATAYA, TODD OLDHAM, and

DANIEL ORTEGA, knowingly conducted, financed, managed, supervised, directed, and owned all and part of BET ODOG INTERNATIONAL, an illegal gambling business involving sports bookmaking, which gambling business was a violation of the law of the State of California in which it was conducted (in violation of California Penal Code, Section 337(a), and which involved at least five persons who conducted, financed, managed, supervised, directed, and owned all and part of BET ODOG INTERNATIONAL, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day; in violation of Title 18, United States Code, Section 1955.

### Count 3

#### (MONEY LAUNDERING CONSPIRACY)

16. Paragraphs 1 through 7 are hereby realleged and incorporated by reference herein.

17. Beginning at least as early as June 2011 and continuing up to and including January 12, 2016, within the Southern District of California and elsewhere, defendant OWEN HANSON, aka "O-Dog", LUKE FAIRFIELD, KENNY HILINSKI, GIOVANNI BRANDOLINO, aka "Tank", CHARLIE D'AGOSTINO, MARLYN VILLAREAL, DYLAN ANDERSON, TIM BRYAN, JEFF BELLANDI, aka "Jazzy", and others knowingly and intentionally conspired:

a. to conduct financial transactions affecting interstate and foreign commerce that involve the proceeds of specified unlawful activity, to wit illegal drug distribution proceeds and illegal gambling proceeds, knowing that the property involved in these financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in

1  whole and in part to conceal and disguise the nature, the location,
2  the source, the ownership, and the control of the proceeds of the
3  specified unlawful activity, in violation of Title 18, United States
4  Code, Section 1956(a)(1)(B)(i);

5        b.  to  transport,  transmit,  and  transfer  monetary
6  instruments and funds from a place in the United States to and through
7  a place outside the United States, with the intent to promote the
8  carrying on of specified unlawful activity, to wit illegal drug
9  distribution and illegal gambling, in violation of Title 18,
10 United States Code, Section 1956(a)(2)(A);

11       c.  to  engage  in  monetary  transactions  in  criminally
12 derived property of a value greater than $10,000, derived from
13 specified unlawful activity, to wit illegal drug distribution and
14 illegal gambling, in and affecting interstate and foreign commerce,
15 in violation of Title 18, United States Code, Section 1957.

16 **METHODS AND MEANS OF THE MONEY LAUNDERING CONSPIRACY**

17    18.  In furtherance of the money laundering conspiracy charged in
18 Count 3, the co-conspirators used the following methods and means,
19 among others:

20              a.  directed runners, including defendants MARLYN
21                  VILLAREAL, DYLAN ANDERSON, and TIM BRYAN, to
22                  collect gambling debts and drug proceeds from
23                  customers in the Central and Southern Districts of
24                  California, and to launder the illegal drug and
25                  gambling proceeds;

26              b.  directed runners to open bank accounts in the name
27                  of fictitious companies controlled by OWEN HANSON

28

1   and HILINSKI to hold the proceeds of the illegal

2   drug and gambling activities;

3   c.   wired proceeds of drug trafficking activities into

4   bank accounts in the names of fictitious companies

5   controlled by OWEN HANSON and KENNY HILINSKI; and

6   d.   transported   proceeds   of   drug   trafficking

7   activities from Australia and other countries, to

8   the United States.

9   All in violation of Title 18, United States Code, Section 1956(h).

10   **Count 4**

11   **(CONSPIRACY TO DISTRIBUTE ILLEGAL NARCOTICS)**

12   19.   Beginning in or about January 2014, and continuing up to and

13   including   September   8,   2015,   within   the   Southern   District   of

14   California,   and   elsewhere,   defendants   OWEN   HANSON,   aka   "O-Dog",

15   GIOVANNI BRANDOLINO, aka "Tank", DEREK LOVILLE, and others, knowingly

16   and intentionally conspired to distribute illegal narcotics, to wit:

17   (a) methamphetamine, a Schedule I Controlled Substance; (b) heroin, a

18   Schedule I Controlled Substance; (c) cocaine, a Schedule II Controlled

19   Substance; and (d) and methylenedioxyamphetamine (MDMA), also known as

20   "ecstasy," a Schedule I Controlled Substance; all in violation of

21   Title 21, United States Code, Sections 841(a)(1) and 846.

22   **Special Sentencing Factor**

23   20.   As to defendant OWEN HANSON, aka "O-Dog", it is further

24   alleged that the above-charged conspiracy involved at least five

25   kilograms of cocaine; in violation of Title 21, United States Code,

26   Section 841(b)(1)(A)(ii).

27   //

28   //

## Forfeiture Allegation 1

### (RACKETEERING CONSPIRACY FORFEITURE)

21. The allegations contained in Count 1 and Paragraphs 1 through 8 are hereby realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States under Title 18, United States Code, Section 1963.

22. Upon conviction of the offense alleged in Count 1 of this Superseding Indictment, defendants OWEN HANSON, aka "O-Dog", KENNY HILINSKI, LUKE FAIRFIELD, GIOVANNI BRANDOLINO, aka "Tank", DANIEL PORTLEY-HANKS, and JACK RISSELL, aka "Animal", shall forfeit to the United States, all rights, titles, and interests:

a. acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(1);

b. an interest in, security of, claims against, and property and contractual rights affording a source of influence over ODOG ENTERPRISE, which these defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(2); and

c. property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(3).

23.   The interests of said defendants subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to at least $5,000,000 and all interests and proceeds traceable thereto, including but not limited to the following assets:

| Bank | Account Ending | Name on Account |
|------|---------|-----------------|
| U.S. Bank | x3665 | Coral Music Group |
| U.S. Bank | x7044 | 310 Development |
| Wells Fargo | x9091 | ATM Unlimited |
| Wells Fargo | x4622 | Kenny Hilinski |

## Substitute Property Forfeiture

24.   If any of the above-described forfeitable property, as a result of any act or omission of said defendants —

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of the property listed above as being subject to forfeiture.

25.   Said defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

## Forfeiture Allegation 2

### (ILLEGAL GAMBLING BUSINESS FORFEITURE)

26.   The allegations contained in Count 2 and Paragraphs 1 through 4 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America under Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c).

27.   Upon conviction of the offense alleged in Count 2 of this Superseding Indictment and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), Title 28, United States Code, Section 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure, defendant defendants OWEN HANSON, aka "aka O-Dog", LUKE FAIRFIELD, KENNY HILINKSKI, GIOVANNI BRANDOLINO, aka "Tank", DANIEL PORTLEY-HANKS, JACK RISSELL, aka "Animal", CHARLIE D'AGOSTINO, MARLYN VILLAREAL, DYLAN ANDERSON, TIM BRYAN, JIM MUSE, JEFF BELLANDI, aka "Jazzy", CURTIS CHEN, JAMES DULEY, DEE FOXX, KHALID PETRAS, RAHUL BHAGAT, DAVID KIPPER, BRYAN MATAYA, TODD OLDHAM, and DANIEL ORTEGA shall forfeit to the United States any property, real or personal, which constitutes or was derived from proceeds traceable to such violation and all property, including money, used in violation of Title 18, United States Code, Section 1955, including, but not limited to, not less than $5,000,000 and all the accounts and interests described in paragraph 22 above.

//
//
//
//
//

## Substitute Property Forfeiture

28. If any of the above-described forfeitable property, as a result of any act or omission of said defendants —

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the property listed above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1955(d), and Title 28, United States Code, Section 2461(c).

## Forfeiture Allegation 3

### (MONEY LAUNDERING CONSPIRACY FORFEITURE)

29. The allegations contained in Count 3 and Paragraphs 1 through 4 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America under Title 18, United States Code, Section 982(a)(1).

30. Upon conviction of the offense alleged in Count 3 of this Superseding Indictment and pursuant to Title 18, United States Code, Section 982(a)(1), and Rule 32.2, Federal Rules of Criminal Procedure, defendant defendants OWEN HANSON, aka "O-Dog", LUKE FAIRFIELD, KENNY HILINSKI, CHARLIE D'AGOSTINO, MARLYN VILLAREAL, DYLAN ANDERSON, and

TIM BRYAN, shall forfeit to the United States all property, real and personal, which was involved in such offense, shall, upon conviction, forfeit to the United States any and all property constituting, or derived from, any proceeds that the defendants obtained, directly or indirectly, as the result of the offense, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in and property traceable to such property, including but not limited to: at least $5,000,000 and all interests and proceeds traceable thereto, including but not limited to:

| Bank | Account Ending | Name on Account |
|------|----------------|-----------------|
| U.S. Bank | x3665 | Coral Music Group |
| U.S. Bank | x7044 | 310 Development |
| Wells Fargo | x9091 | ATM Unlimited |
| Wells Fargo | x4622 | Kenny Hilinski |

### Substitute Property Forfeiture

31. If any of the above-described forfeitable property, as a result of any act or omission of said defendants —

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendants up to the value of the property listed above as being subject to forfeiture.

## Forfeiture Allegation 4

### (DRUG CONSPIRACY FORFEITURE)

32. The allegation contained in Count 4 is hereby realleged and by its reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 21, United States Code, Section 853.

33. As a result of the commission of the felony offense alleged in Count 4 of this indictment, said violation being punishable by imprisonment for more than one year and pursuant to Title 21, United States Code, Sections 853(a)(1) and 853(a)(2), defendants OWEN HANSON, aka "O-Dog", GIOVANNI BRANDOLINO, aka "Tank", and DEREK LOVILLE shall, upon conviction, forfeit to the United States any and all property constituting, or derived from, any proceeds that the defendants obtained, directly or indirectly, as the result of the offense, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count 4 of this Superseding Indictment.

34. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a) cannot be located upon the exercise of due diligence;

      (b) has been transferred or sold to, or deposited with, a third party;

//

1      (c)   has been placed beyond the jurisdiction of the Court;

2      (d)   has been substantially diminished in value; or

3      (e)   has been commingled with other property which cannot be

4  subdivided without difficulty;

5  it is the intent of the United States, pursuant to Title 21, United

6  States Code, Section 853(p), to seek forfeiture of any other property

7  of the defendant up to the value of the said property listed above as

8  being subject to forfeiture, all in violation of Title 21, United

9  States Code, Section 853.

10  All pursuant to Title 18, United States Code, Sections 981(a)(1)(C),

11  982, 1955(d), and 1963, Title 21, United States Code, Section 853, and

12  Title 28, United States Code, Section 2461(c).

13      DATED:  January 12, 2016.

14                                              A TRUE BILL:

15

16                                              Foreperson

17  LAURA E. DUFFY

18  United States Attorney

19  By:

20  ANDREW P. YOUNG

21      Assistant U.S. Attorney

22  By:

23  MARK PLETCHER

24      Assistant U.S. Attorney

25  By:

26  BENJAMIN J. KATZ

27      Assistant U.S. Attorney

28